*147
 
 Battle, J.
 

 The discharge of a debtor from prison, under the first and third sections of the 59th chapter of the Eevised Code, which is taken from the act of 1773, (ch. 100, sec. 1, of the Eevised Code of 1820,) is, in express terms, confined to the debt sued for, and the cost of suit thereon. Those sections of the act make no provision for notice to other creditors, and the counsel for the defendants admit that the act does not profess to discharge the person of the debtor from arrest as to them. But the counsel contend that, by the operation of the 39th section of the constitution of the State, the debtor, who is discharged from imprisonment, under the sections and chapter of the Eevised Code to which we have referred, is
 
 ipso facto
 
 discharged from arrest as to all his then existing creditors, whether with, or without notice; and they rely upon the cases of
 
 Burton
 
 v.
 
 Dickens,
 
 3 Murph. Rep. 103, and
 
 Jordan
 
 v.
 
 James,
 
 3 Hawks’ Rep. 110, as authorities directly in point in favor of their position.
 

 The section of the constitution upon which the counsel rely, declares “ that the person of a debtor, where there is not a strong presumption of fraud, shall not be continued in prison after delivering up,
 
 bona fide,
 
 all his estate, real and personal, for the use of his creditors, in such manner as shall be hereafter regulated by law.” At the time when the cases above mentioned were decided, it was supposed that the word “confined” instead of “continued” was used in the constitution. It was so in all the printed copies of that instrument then published, but upon an examination of the original, deposited in the office of the Secretary of State, it was found that the word “ continued” was the proper one, and it has been inserted in all the printed copies published by authority since that time. Whether the Court would have decided the cases of
 
 Burton
 
 v.
 
 Dickens,
 
 and
 
 Jordan
 
 v.
 
 James,
 
 differently, had they had a correct copy of the constitution before them, we cannot now say, nor is it necessary, in the view which we have taken of the present case, that we should determine how the cases ought to have been decided ; for supposing that the words “ confined” and “ continued” in the connection in which
 
 *148
 
 the latter is found, must receive the same construction, we, after much reflection, have come to the con elusion that it does not now embrace a case like the one before ns.
 

 The constitution gives, in express terms, to the legislature, the power to regulate the manner in which a debtor shall surrender his property for the use of his creditors, and he must pursue the regulations which may be thus prescribed, in order to secure his person from arrest for his debts ;
 
 Crain v.
 
 Long, 3 Dev. Rep. 371. The sixth and several succeeding sections of the 59th chapter of the Revised Code,' taken mainly from the act of 1822, (Taylor’s Rev. ch. 113,) were enacted for the express purpose of preventing the imprisonment of honest insolvents altogether, upon their complying with the rules and regulations therein set forth. Without attempting to specify every thing which the debtor is repaired to do in order to obtain his discharge, it is sufficient to say that he must give bond and good security for his appearance at court, and may give notice to all his creditors of his intention to take the benefit of the act, and if he do so, and thereupon is permitted to take the oath prescribed in the act, he shall then he forever free from imprisonment for debt, as to every creditor, to whom notice may have been given. If he had property when he was taken by
 
 capias ad
 
 satisfaciendum, or was otherwise in the custody of the sheriff or other officer for debt, the act provides a mode for his making a surrender of it ; or if he had no property, allows him to take the oath without any surrender, and if he will only pursue the plain requirements of the law, nothing but a fraudulent concealment of Ins property, admitted, or found by a jury, can prevent Ills relief from imprisonment. The object of the constitution, in the declaration that his person “ shall not he continued in prison, after delivering up,
 
 bona
 
 fide, all his estate, real and personal, for the use of his creditors,” will have been thus fully accomplished.
 

 The provisions of the acts of 1773 and 1822, are brought together in the 59th chapter of the Revised Code, and form one act concerning “Insolvent Debtors.” Being one
 
 *149
 
 entire act upon the same subject, it is our duty to give to it such a construction as to make each part consistent with every other part, and to keep the whole within the bounds ot' the paramount authority of the constitution. This, we think, will be done if we construe each section according to the plain import of its language. A debtor who does not choose to a^vail himself of the privileges held out to him. in the sixth and subsequent sections, but suffers himself to be committed to jail under the first or third section, must be content to discharge himself only as to the debt for which he is then sued ; for to that extent only do those sections go. But if he prefer to take the benefit of those sections which will secure his exemption from imprisonment altogether, he is allowed a fail'opportunity to do so ; and there is no necessity for the constitution to step in and keep him out of prison under the first or third section.
 

 Our opinion is, then, that the enactment of 1822, and the incorporation of its provision with those of the act of 1773 into one statute of the Revised Code, has produced a material and (as we think) a beneficial change in the effect which it was held that the constitution had upon the last named act when it stood alone.
 

 The case of
 
 Crain
 
 v.
 
 Long, to
 
 which we have already referred, decided that the discharge of an insolvent under the act of 1822, would protect him from arrest by those creditors only, to whom he had given notice, because the act provided that he might, if he chose, notify all his creditors, and make his discharge good as against those only whom he did notify ; and that it was his own fault if he did not give notice to all. The same principle must be applied to the statute contained in the 59th chapter of the Revised Code. Some of itsseetions give to an insolvent a plain and effectual remedy against the imprisonment of his person, and it is his own fault if he will not adopt it. The 39 th section of the constitution was intended to impose on the legislature, the duty of passing an act by which the stern rule of the old law, that a creditor might imprison his debtor for life, should be abrogated. That was held to be done by the act of 1773, enforced by that of 1778,
 
 *150
 
 even though the creditors other than the one at whose instance the debtor was in custody, were not therein required to be notified of the intention of such debtor, to apply for his discharge; and the constitutional injunction was supposed to be so imperative that all the creditors were held to be bound by the discharge, although they had no notice of the proceedings. This was certainly going very far toward the annihilation of that great fundamenral principle that no person shall be deprived of his rights without having had an opportunity to be heard. The act of 1773, and the decisions upon it, went very far, too, toward the violation of another great principle, that a creditor might have his rights passed upon as to questions of fact as well as of law, by a Judge or two justices of the peace, out of court, without the intervention of a jury. Then came the act of 1822, which was intended to be, and has always been supposed to be, much more favorable to insolvent debtors, and which yet at the same time restored to their proper place in our law, the two great principles to which we have adverted. That act has fully complied with the injunction of the constitution, by providing the means whereby an honest debtor may, after a fair surrender of his property, if he have any, and without it, if he have none, be discharged without any imprisonment at all; and surely after having done this, it was competent for the legislature to enact that the effect of a discharge by a Jutlge, or two j nstices out of court, should be confined to the creditor at whoso suit the debtor was imprisoned. But it is said that the construction put upon the act of 1773, cannot be varied by its having been revised and inserted in the Code, and for this is cited the cases of
 
 Stallworth
 
 v.
 
 Stallworth,
 
 29 Ala. Rep. 16, and
 
 Sartor
 
 v.
 
 Branch Bank at
 
 Montgomery, Ibid, 353. This may be so if the act were inserted therein alone, or in connection with other provisions, which were not designed to operate upon it. But it must be otherwise, where it is incorporated with another act, which makes it necessary to vary the construction, in order that every part of the new act may have a consistent operation.
 
 *151
 
 This view of the case renders it unnecessary for ns to consider some other questions discussed at the bar.
 

 Our conclusion is that the order made in the Court below, by which the defendant Simmons was discharged from custody, was erroneous, and must be reversed, and this opinion must be certified as the law directs.
 

 Per Curiam, Judgment reversed.